IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ORLANDO PACHECO, and
TITO PACHECO, JR., Individually; as
Co-Personal Representatives of the
ESTATE OF TITO PACHECO, deceased;
and as Co-Guardians of J.P. and N.P., Minors

       Plaintiffs,

              v.                                  1:17-cv-01005-MV-LF

CITY OF ALBUQUERQUE,
JOHN DOES 1-10 and JANE DOES 1-10,
Individually,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me on defendant City of Albuquerque's Motion, and

Memorandum in Support, for Judgment on the Pleadings as to Plaintiffs' Civil Rights Claims

Brought Pursuant to 42 U.S.C. §§ 1983 and 1988 and as to Plaintiffs' Negligence, Assault,

Battery, and Federal Constitutional Claims Brought Pursuant to Section 41-4-12 of the New

Mexico Tort Claims Act, filed January 18, 2018. Doc. 24. Plaintiffs filed their response on

February 12, 1018. Doc. 35. The City filed its reply on February 26, 2018. Doc. 46.

THIS MATTER also comes before me on plaintiffs Orlando Pacheco, Tito Pacheco Jr.,

and the Estate of Tito Pacheco's Motion to Amend Complaint, filed on April 11, 2018. Doc. 63.

The City filed its response on April 26, 2018, Doc. 74, and plaintiffs filed their reply on May 10,

2018, Doc. 79.

The Honorable District Judge Martha Vazquez referred both motions to me to conduct

hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required

to recommend to the District Court an ultimate disposition pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(A), (B) and (b)(3), and Rule 72(a) and (b) of the Federal Rules of Civil Procedure. Docs. 64, 86. Having read the motions and being fully advised in their premises, I recommend that the Court GRANT the City's motion for judgment on the pleadings in part, DENY plaintiffs' motion to amend, decline to exercise supplemental jurisdiction over the state law claims, and REMAND this case to the Second Judicial District Court for a determination of plaintiffs' state tort claims.

## I.    Background Facts and Procedural Posture

This case arises from a high speed chase through the streets of Albuquerque on June 20, 2017. The facts are taken from the allegations in the plaintiffs' complaint and their proposed amended complaint, which the Court assumes are true for the purposes of these motions. The chase began when Albuquerque Police Department ("APD") officers contacted David Barber and Stephanie Pacheco at the Balloon Fiesta Mobile Home Park in connection with the investigation of a stolen RV. Doc. 1-1 at 3. APD officers in tactical uniforms made contact with Barber and Pacheco. *Id.* Instead of exiting the RV, Barber started it, and accelerated through the closed gate and out onto the city streets. *Id.* APD officers chased Barber throughout the city, which resulted in several crashes as the RV collided with multiple vehicles during the chase. *Id.* at 4. In plaintiffs' proposed amended complaint, they allege that after three hours and seventeen minutes, proposed defendant APD Officer Albert Sandoval advised other individual proposed defendant officers to stop the RV by "any means necessary." Doc. 63-1 at 4. Officer Sandoval knew that officers likely would cause a collision to stop the RV. *Id*. at 5. Officer Sandoval also understood the inherent risk to everyone involved, including the risk to the traveling public, like Tito Pacheco (Sr.), when he communicated the directive for officers to use police vehicles to

stop the RV.  *Id.*  At approximately 8:20 p.m., proposed defendant APD Officer Phetamphone Pholphiboun performed a Pursuit Intervention Technique, or "PIT maneuver," on the RV, causing it to spin out of control and hit the vehicle driven by Tito Pacheco (Sr.).  Doc. 1-1 at 4; Doc. 63-1 at 5.  Mr. Pacheco sustained severe and debilitating injuries.  Doc. 1-1 at 3.  On July 11, 2017, after spending three weeks in the intensive care unit at University of New Mexico Hospital, Mr. Pacheco died from his injuries, at age 39.  *Id.* at 4–5.  Mr. Pacheco left behind three children, including two minor children for whom he had been the sole provider.  *Id.* at 5.

Plaintiffs initiated this lawsuit in the Second Judicial District Court for the State of New Mexico on August 24, 2017.  Doc. 1-1 at 1.  The City removed the case to this Court on October 4, 2017, based on "original jurisdiction because the Complaint is founded on [claims] or rights arising under the United States Constitution and the laws of the United States."  Doc. 1 at 2.  On January 18, 2018, the City filed a motion for judgment on the pleadings, arguing that plaintiffs' complaint fails to set forth plausible claims in Counts I, II, III, IV at ¶ 69, V at ¶ 77, VI at ¶ 87, VII at ¶ 96, and VIII at ¶ 103[1] of their complaint.[2]  *See* Doc. 24 at 9–13, 17.  Specifically, the City argues that there are adequate remedies under New Mexico law, and that plaintiffs cannot state a plausible claim under 42 U.S.C. § 1983 because they fail to allege a violation of Mr.

---

[1] The allegations contained in paragraphs 69, 77, 87, 96 and 103 of the complaint are identical and state:  "Defendants' actions as stated above infringed upon Tito Pacheco's constitutional rights, including the right to not be deprived of life or liberty without due process of law and the right to be free from the use of excessive force by police officers as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution."  These paragraphs are subject to the same analysis as applied to Count I of the complaint.  Consequently, the Court will not separately address these specific paragraphs.

[2] The City also asserts that plaintiffs' negligence claims in Counts IV, V, VI and VII are not plausible because the allegations do not establish that the defendants' immunity has been waived under the New Mexico Tort Claims Act.  Doc. 24 at 13–16.  Because I recommend that the Court decline to exercise supplemental jurisdiction over the state law claims, I will not address these arguments.  The state court may address the state tort claim issues should the Court adopt my recommendation and remand this case to the Second Judicial District Court.

Pacheco's Fourth or Fourteenth Amendment rights.[3]  *Id.* at 9–13.

Plaintiffs filed their motion to amend the complaint to "add the names of the John Doe Defendants and to add and correct factual allegations in the Complaint based on the evidence." Doc. 63 at 2.  Because the claims in the proposed amended complaint remain the same as those in plaintiffs' initial complaint, the City and the individual officers named in the proposed amended complaint opposed the amendment for the same reasons set forth in the City's motion for judgment on the pleadings.  The City incorporated its arguments from its motion for judgment on the pleadings into its response opposing plaintiffs' motion to amend and argues that plaintiffs' proposed amendment is futile.  Doc. 74 at 2.  The Court therefore will consider the motion for judgment on the pleadings in conjunction with the motion to amend.

## II.     Discussion

### A.     Legal Standard

The City moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Doc. 24.  A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6).  *See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000).  In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint fails to state a

---

[3] The City also argues that plaintiffs Orlando Pacheco and Tito Pacheco Jr. do not have standing to assert § 1983 claims individually on their own behalf or on behalf of the minor children.  Doc. 24 at 6–8.  Plaintiffs conceded this point and agreed to dismiss Counts I through III for plaintiffs Orlando Pacheco, Tito Pacheco, Jr., individually, and the minor children, N.P. and J.P.  Doc. 35 at 5; Doc. 70.  Accordingly, the Court does not address this issue.  Orlando Pacheco and Tito Pacheco, Jr., continue to be co-personal representatives for the Estate of Tito Pacheco, and they may prosecute Counts I through III in their representative capacity,

claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a complaint must include enough facts to state a claim for relief that is plausible on its face. *Id*. at 555–56. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be sufficient to establish that, if true, "the plaintiff plausibly (not just speculatively) has a claim for relief." *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009) (internal quotation marks and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting FED. R. CIV. P. 8(a)(2)). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Id*.

Furthermore, plaintiff must plead more than labels, conclusions or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Conclusory allegations of liability, without supporting factual content, are insufficient. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677. As such, a proposed amended complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" does not meet the Rule 8 standard and is futile. *Id*. (quoting *Twombly*, 550 U.S. at 557, and FED. R. CIV. P. 8(a)(2)).

Plaintiffs' motion to amend is governed by Federal Rule of Civil Procedure 15, which provides that when a party may no longer amend its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Although leave to amend shall be given freely, "the trial court may deny leave to amend where amendment would be futile." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997). In this case, defendants oppose plaintiffs' motion to amend on the grounds that amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a dispositive motion such as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). In arguing the futility of the amendment, the City incorporated the arguments made in its motion for judgment on the pleadings into its response to plaintiffs' motion to amend. Doc. 74 at 2.

B.    Plaintiffs' Claims

In Counts I, II, and III of the complaint, plaintiffs bring claims against the City of Albuquerque and John Doe defendants (the individual officers named in the proposed amended complaint) under 42 U.S.C. § 1983 for a violation of Tito Pacheco's constitutional rights. In Count I of the complaint, plaintiffs allege that the individually named officers used excessive force and acted with deliberate indifference to Mr. Pacheco's rights when they conducted a PIT maneuver to stop David Barber. Doc. 1-1 at 5–7. In Count II, plaintiffs allege that the individual officers failed to intervene to prevent the deprivation of Mr. Pacheco's constitutional rights. *Id*. at 7–8. In Count III, plaintiffs allege municipal liability for the City's policies, practices, and customs that resulted in the violation of Mr. Pacheco's constitutional rights. *Id*. at 8–9. There is

no dispute that Counts II and III are dependent on a finding that the individual officers committed a constitutional violation. Consequently, because Count I fails to state a constitutional violation, Counts II and III must also fail.[4]

C.      42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but merely provides the mechanism for the enforcement of existing constitutional and federal statutory rights. *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002). To assert a claim under § 1983, a plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by a federal statute or regulation, (2) that was proximately caused (3) by the conduct of a "person" (4) who acted under color of any state statute, ordinance, regulation, custom, or usage. *Summum v. City of Ogden*, 297 F.3d 995, 1000–01 (10th Cir. 2002).

The Supreme Court has made clear that there is no *respondeat superior* liability under 42 U.S.C. § 1983. *See Iqbal*, 556 U.S. at 676. "[V]icarious liability is inapplicable to *Bivens* and § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through the

---

[4] In its motion for judgment on the pleadings, the City asks the Court to abstain from deciding the federal constitutional claims because there are adequate remedies under New Mexico law. Doc. 24 at 8. In *Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015) (*Browder I*), the case on which the City relies, the court does not hold that district courts must abstain. Indeed, after noting that *Parratt v. Taylor*, 451 U.S. 527 (1981) permits federal courts to abstain, Judge (now Justice) Gorsuch nonetheless analyzed the case under the Fourteenth Amendment substantive due process standard and held that the plaintiff had stated a claim under § 1983. *Browder I*, 787 F.3d at 1079–83. The Court therefore declines to abstain from deciding the federal constitutional claims.

official's own individual actions, has violated the Constitution." *Id.* Because there is no

vicarious liability under § 1983, "each Government official, his or her title notwithstanding, is

only liable for his or her own misconduct." *Id.* at 677. Moreover, a § 1983 civil rights action

"must be based on the violation of plaintiff's personal rights, and not the rights of someone else."

*Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).

> D. Plaintiffs Fail to State a Claim for a Violation of Tito Pacheco's Fourth Amendment Rights.

The Fourth Amendment provides that "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated . . . ." U.S. CONST. amend. IV. "The Fourth Amendment covers only 'searches and

seizures.'" *City of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). There is no allegation that

APD officers searched Mr. Pacheco. Thus, the issue in this case is whether APD officers seized

Mr. Pacheco within the meaning of the Fourth Amendment.

"To state a claim under the Fourth Amendment, plaintiffs must show both that a 'seizure'

occurred and that the seizure was 'unreasonable.'" *Childress v. City of Arapaho*, 210 F.3d 1154,

1156 (10th Cir. 2000). A seizure requires "an intentional acquisition of physical control" of the

person being seized. *Id.* "A person is seized by the police and thus entitled to challenge the

government's action under the Fourth Amendment when the officer, by means of physical force

or show of authority, terminates or restrains his freedom of movement, through means

intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation

marks, citations, and emphasis omitted). "A police officer may make a seizure by a show of

authority and without the use of physical force, but there is no seizure without actual

submission." *Id.* As the Supreme Court has explained:

a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied.

*Lewis*, 523 U.S. at 844 (internal quotation marks and emphasis omitted). "In sum, the Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct." *Brower v. City of Inyo*, 489 U.S. 593, 596 (1989) (internal quotation and citation omitted).

In this case, plaintiffs do not allege in their complaint, or in the proposed amended complaint, that APD officers intentionally seized Mr. Pacheco by performing the PIT maneuver. *See* Docs. 1-1, 63-1. Instead, the complaint alleges that despite officers' awareness of nearby heavy traffic, an APD vehicle performed a PIT maneuver on the RV, causing it to spin out of control and hit the vehicle driven by Mr. Pacheco. Doc. 1-1 at 4. The proposed amended complaint adds details and specifically names the officer who performed the PIT maneuver, but the essential allegations are the same. *See* Doc. 63-1 at 4–5. Although APD officers' actions terminated Mr. Pacheco's freedom of movement, neither the complaint nor the proposed amended complaint alleges that the officers intended to stop Mr. Pacheco, or that Mr. Pacheco submitted to the officers' show of authority or use of physical force. Rather, the allegations establish that the PIT maneuver accidentally resulted in the termination of Mr. Pacheco's freedom of movement. Consequently, plaintiffs fail to state a claim for a violation of Mr. Pacheco's Fourth Amendment rights.

Plaintiffs do not address whether Mr. Pacheco was seized within the meaning of the Fourth Amendment. Instead, they argue that APD officers used excessive force in performing the PIT maneuver. Doc. 35 at 5–8; Doc. 79 at 2–4. In order to analyze whether the use of the

PIT maneuver was an excessive use of force, there still must be an underlying seizure that was made unreasonable by the alleged excessive force. *See Childress*, 210 F.3d at 1156–57 (10th Cir. 2000) (because officers intended to stop minivan and fugitives to deliver hostages from unlawful abduction, shots fired at minivan that stopped minivan and injured hostages was not a seizure of the hostages within the meaning of the Fourth Amendment); *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994) (plaintiff failed to state an excessive force claim under the Fourth Amendment because he did not challenge the actual seizure—only the officers' behavior prior to the seizure). As discussed above, APD officers did not seize Mr. Pacheco within the meaning of the Fourth Amendment. Without an underlying seizure, there cannot be a claim for excessive use of force in effecting a seizure in violation of the Fourth Amendment. Thus, the plaintiffs have not pled sufficient facts, if taken as true, to state a claim against the individually named officers for a violation of Mr. Pacheco's Fourth Amendment rights.

  E. <u>Plaintiffs fail to state a claim for a violation of Tito Pacheco's Fourteenth Amendment Rights</u>.

  The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Supreme Court has emphasized that "the touchstone of due process is protection of the individual against arbitrary action of government," and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 845–46 (internal brackets, quotation marks, and citations omitted). The due process clause of the Fourteenth Amendment has a procedural component and a substantive component. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1078 (10th Cir. 2015) (hereinafter *Browder I*). Procedurally, the due process clause guarantees a fair procedure in connection with any deprivation of life, liberty, or property by a State. *Collins v. City of Harker Heights*, 503 U.S.

115, 125 (1992). Plaintiffs, however, do not advance a procedural due process claim in this case. Instead, they "rely on the substantive component of the Clause that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

To establish a substantive due process violation, plaintiffs must show that the individually named defendants' behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. "The level of culpability required for action to shock the conscience largely depends on the context of the action." *Browder v. Casaus*, 675 F. App'x 845, 847 (10th Cir. 2017) (unpublished) (hereinafter *Browder II*). The lowest level of culpability is negligent conduct, which is "categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849. In *Lewis*, the Supreme Court explained that negligence, "the lowest common denominator of customary tort liability," is not sufficient to state a substantive due process violation claim under the Fourteenth Amendment. *Id.* "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849. To the extent plaintiffs allege that the individual officers were negligent in performing the PIT maneuver, those allegations fail to state a constitutional violation.

The middle level of culpability includes "something more than negligence but less than intentional conduct, such as recklessness or gross negligence." *Id.* (internal quotations and citations omitted). The Tenth Circuit has characterized the middle range standard as "deliberate indifference" or "calculated indifference." *Green v. Post*, 574 F.3d 1294, 1302 (10th Cir. 2009). When "a government official has enough time to engage in 'actual deliberation,' conduct that shows 'deliberate indifference' to a person's life or security will shock the conscience and

thereby violate the Fourteenth Amendment." *Perez v. Unified Gov't of Wyandotte City/Kansas City*, 432 F.3d 1163, 1166 (10th Cir. 2005) (quoting *Lewis*, 523 U.S. at 851).

In *Perez*, the court acknowledged that there may be times when behavior done in a "time-sensitive, high-pressure situation may nevertheless shock the conscience if the official has time to deliberate before acting." *Id*. Liability for deliberate indifference, however, "rests upon the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis*, 523 U.S. at 853. The Supreme Court has described the competing obligations that face police officers facing a situation that calls for fast action:

> Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made in haste under pressure, and frequently without the luxury of a second chance.

*Id.* (internal citation and quotation omitted). In a police chase, the officer "must balance on one hand the need to stop a suspect . . . and, on the other, the high-speed threat to all those within stopping range," whether they are suspects or innocent bystanders. *Id.*

When actual deliberation is practical, the court will employ a deliberate indifference standard. *Green*, 574 F.3d at 1301. To employ the deliberate indifference standard, the Court must make an exact analysis of "the circumstances that surround the conduct at issue and the governmental interest at stake." *Id*. at 1302. For example, in *Browder II*, an officer ran a red light in his police vehicle causing a crash, and killing one occupant and seriously injuring the other. 675 F. App'x at 846. The Tenth Circuit applied the deliberate indifference standard because the officer was not responding to an emergency, nor was he pursuing law enforcement goals. *Id.* at 848. Instead, he was "speeding through city streets for almost 9 miles through eleven city intersections and at least one red light—all for [the officer's] personal pleasure, on no

governmental business of any kind." *Id.* The court held that the officer had the "luxury of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing [law enforcement] obligations." *Id.* (quoting *Green*, 574 F.3d at 1303). Importantly, however, "[n]o case has applied the deliberate indifference standard to a situation where a government official is responding to an emergency." *Perez*, 432 F.3d at 1168.

Behavior at the high end of the culpability spectrum is the behavior most likely to support a substantive due process claim: "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849. At this end of the spectrum, to state a claim, the plaintiffs must allege that the officers intended to harm the plaintiff. *Id.* at 853. The intent to harm standard "applies whenever decisions must be made 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Perez*, 432 F.3d at 1167 (quoting *Lewis*, 523 U.S. at 853). The intent to harm standard applies to cases where an officer is responding to an emergency situation. "[H]igh-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Lewis*, 523 at 854.

Here, the complaint and proposed amended complaint allege that the defendant officers were involved in a high-speed police chase to apprehend a fleeing suspect, David Barber—not Mr. Pacheco. Although the chase took place over three hours, Doc. 63-1 at 4, during that time the circumstances described in both the complaint and the proposed amended complaint establish that the situation was rapidly evolving, fluid, and dangerous. For example, plaintiffs allege that when officers first made contact with Barber, he "accelerated through the closed gate," drove for

several miles and parked in a cul-de-sac.  Doc. 1-1 at 3; Doc. 63-1 at 4.  When officers failed to apprehend Barber, he fled in the RV to a parking structure and through large sections of Albuquerque at high speeds.  Doc. 1-1 at 4; Doc. 63-1 at 4.  The police continued to pursue Barber in the RV, which became a highly dangerous police chase and resulted in several crashes throughout the city.  *Id*.  Nevertheless, the APD officers in this case were pursuing legitimate law enforcement goals, and were facing an emergent situation that called for fast action.  They had to consider the competing obligations to the public's safety in their attempts to apprehend Barber on the one hand, and the public's safety if they failed to apprehend him on the other.  Accordingly, the intent to harm standard applies.

To establish a violation of Mr. Pacheco's Fourteenth Amendment rights, plaintiffs must allege that the officers intended to harm Mr. Pacheco in their pursuit of Barber.  Neither plaintiffs' complaint nor the proposed amended complaint alleges that the officers who conducted the PIT maneuver did so with the intent to harm Mr. Pacheco.  Although the amended complaint alleges that Officer Sandoval knew when he gave the order to stop the RV by "any means necessary" that he was putting "everyone involved," including the traveling public, at risk, Doc. 63-1 at 4–5, that knowledge is not equivalent to an intent to harm any particular innocent bystander, including Mr. Pacheco.  Accordingly, the officers' execution of the PIT maneuver, which resulted in the collision between the RV and Mr. Pacheco's vehicle and ultimately caused Mr. Pacheco's death, cannot be said to shock the Court's conscience under the due process provision of the Fourteenth Amendment.  Thus, the plaintiffs have not plead sufficient facts, if taken as true, to state a claim against the individually named officers for a violation of Mr. Pacheco's Fourteenth Amendment substantive due process rights in either the original complaint or in the proposed amended complaint.

Count I of plaintiffs' complaint lacks factual allegations sufficient to state a claim to relief that is plausible on its face. Accordingly, the City is entitled to judgment on the pleadings in its favor on Count I. Similarly, the allegations contained in Count I of plaintiffs' proposed amended complaint would be subject to dismissal because the proposed amendment does not state a plausible claim for excessive force under the Fourth Amendment, nor does it state a substantive due process claim under the Fourteenth Amendment. Consequently, any amendment is futile and should not be permitted.

F.     Counts II and III

Count II of plaintiffs' complaint and proposed amended complaint asserts a claim against the individual officers for "failure to intervene" when their colleagues engaged in a violation of Mr. Pacheco's Fourth and Fourteenth Amendment Rights. Doc. 1-1 at 7–8; Doc. 63-1 at 8–9. The plaintiffs' correctly assert that an officer is liable under § 1983 if the officer is in a position to prevent a constitutional violation by a fellow officer, and fails to intervene. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983."). This duty, however, is premised on there being an underlying constitutional violation.

Similarly, Count III of plaintiffs' complaint and proposed amended complaint asserts a municipal liability claim against the City of Albuquerque for its policies, practices, and customs that "condoned and fostered the unlawful conduct of the individual officers." Doc. 1-1 at 8–9; Doc. 63-1 at 9–11. While municipalities are included among those persons to whom § 1983 applies, it only applies where the officers or employees of the municipality have committed a violation of a plaintiff's constitutional rights. To establish municipal liability under § 1983, a plaintiff must demonstrate: (1) that an officer committed an underlying constitutional violation;

(2) that a municipal policy or custom exists; and (3) that there is a direct causal link between the policy or custom and the injury alleged.  *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998) ("[I]n order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation.").

Because plaintiffs fail to allege sufficient facts to establish an underlying constitutional violation, they cannot sustain claims against individual officers for failure to intervene (Count II) or against the City for municipal liability (Count III).  For the reasons stated above, plaintiffs also cannot sustain the claims for a violation of Mr. Pacheco's constitutional rights as asserted in Counts IV, V, VI, VII and VIII, Doc. 1-1 ¶¶ 69, 77, 87, 96, 103, of their complaint.  The proposed amended complaint contains similar allegations in Counts IV through VIII, Doc. 63-1 ¶¶ 82, 90, 100, 109, 116, which fail for the same reasons.

G.    Plaintiffs' Remaining State Law Claims

In their original complaint and their proposed amended complaint, plaintiffs assert ten claims.  Counts I, II, and III are federal claims brought under § 1983.  The remaining claims, Counts IV through X, are state tort claims.  Because I recommend that the Court enter judgment in the defendants' favor on all the federal claims, I also recommend that the Court decline to exercise supplemental jurisdiction over the state tort claims.

A federal court has jurisdiction over a state-law claim brought in a case that also involves a federal question when the federal-law claims and state-law claims in the case "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

725 (1966). The Tenth Circuit has held, however, that district courts generally should decline to exercise jurisdiction over state claims when no federal claims remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). The Supreme Court similarly has counseled that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Gibbs*, 383 U.S. at 726.

In their response to plaintiffs' motion to amend, the City argues that permitting plaintiffs to amend Counts IV (law enforcement officer liability: negligent failure to protect), VI (negligence per se), and VII (assault and battery) is also futile. The Court declines, however, to address these claims—and plaintiffs' other state-law claims—as they are claims that the state court is better equipped to address.

### III.  Conclusion

Plaintiffs do not allege sufficient facts in their original complaint or their proposed amended complaint to state a plausible claim for a violation of Mr. Pacheco's Fourth or Fourteenth Amendment rights, as asserted in Count 1. Consequently, plaintiffs cannot sustain claims for failure to intervene or for municipal liability under § 1983, as asserted in Counts II and III. The City therefore is entitled to judgment on the pleadings with regard to Counts I, II, III, as well as the federal constitutional claims asserted in Counts IV through VIII. Furthermore, permitting the plaintiffs to amend these claims would be futile.

THEREFORE, I recommend that:

1) The Court GRANT the City of Albuquerque's motion for judgment on the pleadings (Doc. 24) in part, and enter judgment in the defendants' favor on Counts I, II, III, IV at ¶ 69, V at ¶ 77, VI at ¶ 87, VII at ¶ 96, and VIII at ¶ 103;

2) The Court DENY plaintiffs Orlando Pacheco, Tito Pacheco Jr., and the Estate of Tito Pachecho's Motion to Amend Complaint (Doc. 63) because the amendment would be futile;

3) The Court decline to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims and remand this case to the Second Judicial District Court.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma,* **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge