IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ORLANDO PACHECO, and
TITO PACHECO, JR., Individually; as
Co-Personal Representatives of the
ESTATE OF TITO PACHECO, deceased;
and as Co-Guardians of J.P. and N.P., Minors,

    Plaintiffs,

        v.                                    1:17-cv-01005-MV-LF

CITY OF ALBUQUERQUE,
JOHN DOES 1-10 and JANE DOES 1-10,
Individually,

    Defendants.

**ORDER ADOPTING**
**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Magistrate Judge Laura Fashing's Proposed Findings and Recommended Disposition ("PF&RD") filed on July 3, 2018 (Doc. 88), regarding Defendant City of Albuquerque's Motion, and Memorandum in Support, for Judgment on the Pleadings as to Plaintiffs' Civil Rights Claims Brought Pursuant to 42 U.S.C. §§ 1983 and 1988 and as to Plaintiffs' Negligence, Assault, Battery, and Federal Constitutional Claims Brought Pursuant to Section 41-4-12 of the New Mexico Tort Claims Act, filed January 18, 2018 (Doc. 24), and on plaintiffs Orlando Pacheco, Tito Pacheco Jr., and the Estate of Tito Pacheco's Motion to Amend Complaint, filed on April 11, 2018 (Doc. 63).

Plaintiffs filed their objections to the PF&RD on July 17, 2018. Doc. 93. The City of Albuquerque ("City") filed its response in opposition to plaintiff's objections on August 2, 2018.

Doc. 95.[1]  Having performed a de novo review on the specific issue to which Plaintiffs object, I find that Plaintiffs' argument is without merit.  I will, therefore, adopt the magistrate judge's PF&RD, GRANT the City's motion for judgment on the pleadings in part, DENY Plaintiffs' motion to amend, decline to exercise supplemental jurisdiction over the state law claims, and REMAND this case to the Second Judicial District Court for a determination of Plaintiffs' state tort claims.

I. **Background Facts and Procedural Posture**

This case arises from a high speed chase through the streets of Albuquerque on June 20, 2017.  The facts are taken from the allegations in Plaintiffs' complaint and their proposed amended complaint, which the Court assumes are true for the purposes of these motions.  In their objections, Plaintiffs submitted deposition testimony that was not submitted to the magistrate judge.  Doc. 93-1.  Although the Court may receive further evidence when conducting a de novo review, FED. R. CIV. P. 72(b)(3); 28 U.S.C. § 636(b)(1), the Court will not consider the deposition testimony submitted by Plaintiffs because the analysis under Rule 12(c) is based solely on the sufficiency of the pleadings.  The Court accepts all the facts pled in the complaint and proposed amended complaint as true when determining the City's motion for judgment on the pleadings and Plaintiffs' motion to amend.

---

[1] Rule 72 of the Federal Rules of Civil Procedure provides for a response to another party's objections within 14 days after being served with a copy.  FED. R. CIV. P. 72(b)(2).  Plaintiffs filed their objections on July 17, 2018, and the City was served electronically through the CM/ECF system.  Doc. 93 at 11.  The City's response, therefore, was due no later than July 31, 2018.  See FED. R. CIV. P. 5(b)(2)(E).  The City contends that it had an additional 3 days, until August 3, 2018, to serve its response to Plaintiffs' objections, citing Rule 6(d) of the Federal Rules of Civil Procedure.  Doc. 95 at 1.  In 2016, Rule 6(d) was "amended to remove service by electronic means under Rule 5(b)(2)(E) from the modes of service that allow 3 added days to the act after being served."  FED. R. CIV. P. 6, Advisory Committee Notes (2016 Amend.).  Consequently, the City's response is untimely.  Accordingly, the Court will not consider the City's response.

The chase began when Albuquerque Police Department ("APD") officers contacted David Barber and Stephanie Pacheco at the Balloon Fiesta Mobile Home Park in connection with the investigation of a stolen RV. Doc. 1-1 at 3. APD officers in tactical uniforms made contact with Barber and Pacheco. *Id.* Instead of exiting the RV, Barber started it, and accelerated through the closed gate and out onto the city streets. *Id.* APD officers chased Barber throughout the city, which resulted in several crashes as the RV collided with multiple vehicles during the chase. *Id.* at 4.

In Plaintiffs' proposed amended complaint, they allege that after three hours and seventeen minutes, proposed Defendant APD Officer Albert Sandoval advised other individual proposed Defendant officers to stop the RV by "any means necessary." Doc. 63-1 at 4. Officer Sandoval knew that officers likely would cause a collision to stop the RV. *Id*. at 5. Officer Sandoval also understood the inherent risk to everyone involved, including the risk to the traveling public, like Tito Pacheco (Sr.), when he communicated the directive for officers to use police vehicles to stop the RV. *Id.*

Proposed Defendant APD Officer Phetamphone Pholphiboun observed proposed Defendant APD Officer Ray Marquez attempt to perform a Pursuit Intervention Technique, or "PIT maneuver," against the RV, but the maneuver did not stop the RV. *Id.* Despite his awareness of traffic nearby, proposed Defendant Officer Pholphiboun rammed[2] the RV with his police vehicle, causing it to spin out of control and hit the vehicle driven by Tito Pacheco (Sr.). Doc. 1-1 at 4; Doc. 63-1 at 5. Mr. Pacheco sustained severe and debilitating injuries. Doc. 1-1

---

[2] Plaintiffs criticize Judge Fashing for stating that Officer Pholphiboun performed a PIT maneuver rather than stating that he "rammed" the RV with his vehicle. This, however, is a distinction without a difference. Plaintiffs characterized the officers' actions as a "PIT maneuver" in their complaint and in their briefing. *See* Doc. 1-1 at 4, ¶ 26; Doc. 35 at 4, 9. Further, as discussed herein, whether the officer conducted a "PIT maneuver" or a "ramming maneuver," Doc. 79 at 2, does not change the analysis under the Fourteenth Amendment.

at 3. On July 11, 2017, after spending three weeks in the intensive care unit at University of New Mexico Hospital, Mr. Pacheco died from his injuries, at age 39. *Id*. at 4–5. Mr. Pacheco left behind three children, including two minor children for whom he had been the sole provider. *Id*. at 5.

Plaintiffs initiated this lawsuit in the Second Judicial District Court for the State of New Mexico on August 24, 2017. Doc. 1-1 at 1. The City removed the case to this Court on October 4, 2017, based on "original jurisdiction because the Complaint is founded on [claims] or rights arising under the United States Constitution and the laws of the United States." Doc. 1 at 2. On January 18, 2018, the City filed a motion for judgment on the pleadings. *See* Doc. 24 at 9–13, 17. On April 11, 2018, Plaintiffs filed their motion to amend the complaint to "add the names of the John Doe Defendants and to add and correct factual allegations in the Complaint based on the evidence." Doc. 63 at 2. Because the claims in the proposed amended complaint remain the same as those in Plaintiffs' initial complaint, the City and the individual officers named in the proposed amended complaint opposed the amendment for the same reasons set forth in the City's motion for judgment on the pleadings. The City incorporated its arguments from its motion for judgment on the pleadings into its response opposing Plaintiffs' motion to amend and argued that Plaintiffs' proposed amendment is futile. Doc. 74 at 2. I referred the motion for judgment on the pleadings and the motion to amend to the magistrate judge, and she considered the motions together. Docs. 64, 86, 88.

Judge Fashing found that Plaintiffs did not allege sufficient facts in their complaint or in the proposed amended complaint to state a plausible claim for a violation of Mr. Pacheco's Fourth or Fourteenth Amendment rights. Doc. 88 at 8–15. Accordingly, the magistrate judge recommended that the Court grant the City of Albuquerque's motion for judgment on the

4

pleadings (Doc. 24) in part, and enter judgment in Defendants' favor for the claims made under 42 U.S.C. § 1983, deny Plaintiffs' motion to amend, and decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. *Id.* at 18.

In their objections, Plaintiffs do not object to the magistrate judge's analysis and recommendation regarding the Fourth Amendment. Doc. 93 at 2. Plaintiffs do, however, object to the magistrate judge's analysis of their Fourteenth Amendment claim. *Id.* Having performed a de novo review, I find that the magistrate judge did not err in her analysis of the Fourteenth Amendment claim, and I will adopt her findings and recommendations.

**II. Legal Standards**

A. Objections to the PF&RD

District courts may refer dispositive motions to a magistrate judge for a recommended disposition. *See* FED. R. CIV.P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . ."). Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." When resolving objections to a magistrate judge's proposal, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

B. Judgment on the Pleadings under Rule 12(c)

The City moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Doc. 24. A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). *See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a complaint must include enough facts to state a claim for relief that is plausible on its face. *Id*. at 555–56. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be sufficient to establish that, if true, "the plaintiff plausibly (not just speculatively) has a claim for relief." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009) (internal quotation marks and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting FED. R. CIV. P. 8(a)(2)). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Id*.

Furthermore, plaintiff must plead more than labels, conclusions or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Conclusory allegations of liability, without supporting factual content, are insufficient. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677. As such, a proposed amended complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" does not meet the Rule 8 standard and is futile. *Id*. (quoting *Twombly*, 550 U.S. at 557, and FED. R. CIV. P. 8(a)(2)).

    C.  <u>Amending a Complaint under Rule 15</u>

Plaintiffs' motion to amend is governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that when a party may no longer amend its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Although leave to amend shall be given freely, "the trial court may deny leave to amend where amendment would be futile." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997). In this case, Defendants oppose Plaintiffs' motion to amend on the grounds that amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a dispositive motion such as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). In arguing the futility of the amendment, the City incorporated the arguments made in its motion for judgment on the pleadings into its response to Plaintiffs' motion to amend. Doc. 74 at 2.

D. <u>42 U.S.C. § 1983</u>

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but merely provides the mechanism for the enforcement of existing constitutional and federal statutory rights. *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002). To assert a claim under § 1983, a plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by a federal statute or regulation, (2) that was proximately caused (3) by the conduct of a "person" (4) who acted under color of any state statute, ordinance, regulation, custom, or usage. *Summum v. City of Ogden*, 297 F.3d 995, 1000–01 (10th Cir. 2002).

The Supreme Court has made clear that there is no *respondeat superior* liability under 42 U.S.C. § 1983. *See Iqbal*, 556 U.S. at 676. "[V]icarious liability is inapplicable to *Bivens* and § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. Because there is no vicarious liability under § 1983, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. Moreover, a § 1983 civil rights action "must be based on the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).

### III. Discussion

A. <u>Plaintiffs Fail to State a Claim for a Violation of Tito Pacheco's Fourteenth Amendment Rights</u>.

As the magistrate judge explained,

> The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Supreme Court has emphasized that "the touchstone of due process is protection of the individual against arbitrary action of government," and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." [*Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998)] (internal brackets, quotation marks, and citations omitted). The due process clause of the Fourteenth Amendment has a procedural component and a substantive component. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1078 (10th Cir. 2015) (hereinafter *Browder I*). Procedurally, the due process clause guarantees a fair procedure in connection with any deprivation of life, liberty, or property by a State. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Plaintiffs, however, do not advance a procedural due process claim in this case. Instead, they "rely on the substantive component of the Clause that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). To establish a substantive due process violation, Plaintiffs must show that the individually named defendants' behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. "The level of culpability required for action to shock the conscience largely depends on the context of the action." *Browder v. Casaus*, 675 F. App'x 845, 847 (10th Cir. 2017) (unpublished) (hereinafter *Browder II*).

Doc. 88 at 10–11.

When considering the context of a Fourteenth Amendment substantive due process case, courts have described three levels of culpability: negligence, deliberate indifference, and intent to harm. *See Lewis*, 523 U.S. at 849 (explaining that negligence is not sufficient to state a substantive due process violation claim under the Fourteenth Amendment), 854 (explaining that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983"); *Green v. Post*, 574 F.3d 1294, 1302 (10th Cir. 2009) (describing the deliberate

indifference standard); *Perez v. Unified Gov't of Wyandotte City/Kansas City*, 432 F.3d 1163, 1166 (10th Cir. 2005) (same).

The magistrate judge found that that the intent to harm standard is applicable to this case. Doc. 88 at 13–14. The intent to harm standard "applies whenever decisions must be made 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Perez*, 432 F.3d at 1167 (quoting *Lewis*, 523 U.S. at 853). The intent to harm standard applies to cases where an officer is responding to an emergency situation or is in pursuit of legitimate law enforcement objectives. *See Lewis*, 523 at 836 (holding that "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation"), 849 (conduct that would support a substantive due process claim is "conduct intended to injure in some way unjustifiable by any government interest"); *Perez*, 432 F.3d at 1167 (intent to harm standard applies in all cases where officers are responding to an emergency call). *Cf. Green*, 574 F.3d 1294 (applying the deliberate indifference standard where an officer was not responding to an emergency situation and was not actually in pursuit of the suspect vehicle); *Browder II*, 675 F. App'x at 848 (finding the officer's behavior was to be analyzed under the deliberate indifference standard because he "had no legitimate law enforcement objective for speeding through a red light"). "The touchstone is whether the officers 'acted with an intent to harm the participants or to worsen their legal plight.'" *Childress*, 210 F.3d at 1158 (quoting *Radecki v. Barela*, 146 F.3d 1227, 1232 (10th Cir. 1998)). "[T]he intent to harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation." *Perez*, 432 F.3d at 1167 (internal quotation and citation omitted). The Tenth Circuit has "previously directed dismissal of claims brought on behalf of an innocent bystander killed during a police

struggle." *Childress,* 210 F.3d at 1157 (citing *Radecki*, 146 F.3d at 1232)). "The *Lewis* principles, therefore, apply whether the claimant is a police suspect or an innocent victim. The touchstone is whether the officers 'acted with an intent to harm the participants or to worsen their legal plight.'" *Id*.

Plaintiffs concur that the intent to harm standard is applicable to this case. Doc. 93 at 4. They object, however, to the magistrate judge's determination that Plaintiffs must allege that the officers intended to harm bystanders, and specifically, Mr. Pacheco, in order to state a claim under the Fourteenth Amendment. Doc. 93 at 4–5. Plaintiffs criticize the magistrate judge for "inaccurately focus[ing] on the intent to harm a specific individual, *i.e.*, Tito Pacheco, rather than [on] the intent to harm or worsen the legal plight" of the participants in general. *Id*. at 5. Plaintiffs argue that the magistrate judge should have focused on the officers' harmful purpose. *Id*. at 9.

Although I agree that the attention need not be on a specific individual, this does not change the result. The focus of the intent to harm standard is not whether the officers had the intent to harm a specific person, but whether the officers had the intent to cause harm to the participants that was unrelated to the legitimate object of their arrest. "'[I]n a high-speed automobile chase aimed at apprehending a suspected offender[,] . . . **only a purpose to cause harm unrelated to the legitimate object of arrest**' is sufficiently 'shocking to the conscience' to establish a due process violation." *Childress*, 210 F.3d at 1157 (quoting *Lewis*, 523 U.S. at 836) (emphasis added).

In *Childress*, two escaped prisoners abducted a mother and her two-year-old daughter and stole the family's minivan. *Childress*, 210 F.3d at 1155. With their hostages in the minivan, the armed prisoners eluded police for 40 minutes. *Id*. During that time, "more than nine law enforcement agencies established ten separate roadblocks in an effort to stop the minivan." *Id*. Although the officers at the roadblocks knew that there was a possibility that there were hostages in the minivan, several fired shots at the van in an attempt to disable it. *Id*. at 1155–56. At the final roadblock, after it had been confirmed that there were hostages, "[v]arious defendants fired a total of twenty-one rounds at the van as it passed through an intersection." *Id*. at 1156. The officers' shots disabled the minivan, and the officers apprehended the escapees. *Id*. There was no dispute that the shots fired by the defendant officers injured both of the hostages. *Id*. at 1156. The mother and her child sued the officers alleging, among other things, a violation of their substantive due process rights under the Fourteenth Amendment. *Id*. at 1157. The Tenth Circuit found the officers had not violated the Fourteenth Amendment because "[n]owhere do plaintiffs present specific facts suggesting that the officers harbored an intent to harm them. Thus, there is no constitutional liability under *Lewis*." *Id*. at 1158.

To state a claim in this case, Plaintiffs must allege sufficient facts that establish that when the proposed Defendant officers rammed the RV with a police vehicle, the officers' purpose was to cause harm that was unrelated to apprehending Barber—the legitimate object of arrest. *See id*. at 1157. Plaintiffs present no specific facts in either the complaint or the proposed amended complaint that suggest that the officers harbored an intent to harm any of the participants in this case that was unrelated to the legitimate law enforcement objective of apprehending Barber. Thus, there is no constitutional violation under *Childress* and *Lewis*.

Plaintiffs contend that a reasonable inference can be drawn from the allegations in the proposed amended complaint that proposed Defendant Officer Albert Sandoval "had the intent to harm, or at the very least intent to worsen the legal plight of, the participants in this incident." Doc. 93 at 5. Plaintiffs focus specifically on the allegations regarding Officer Sandoval who gave APD officers involved in the chase instructions to use "any means necessary," including deadly force, to stop the RV. *Id*. at 5–11. Plaintiffs argue that Officer Sandoval's command for the other officers to use deadly force – when he understood the risk – showed his "intent to harm, or at the very least the intent to worsen the legal plight of, the participants involved in the high-speed chase, including innocent by-standers such as Tito Pacheco." Doc. 93 at 9. As in *Childress*, however, the use of deadly force in and of itself does not shock the conscious of the court for Fourteenth Amendment purposes when the police are pursuing a legitimate law enforcement objective.

In *Childress*, the Tenth Circuit affirmed the district court's dismissal of plaintiffs' claims under circumstances where the officers used deadly force to apprehend the suspects despite knowing the risk to the two innocent hostages in the minivan. Similarly, here, Officer Sandoval authorized the use of deadly force—including the use of a police vehicle as a weapon—to apprehend Barber despite his understanding of the risk to innocent bystanders. *See* Doc. 63-1 at 3–5. The use of a police vehicle as a weapon was done with the intent to apprehend Barber, which was a legitimate law enforcement objective. There are no allegations that the officers "rammed" the RV for the intended purpose of causing harm to the participants that was not related to their purpose of stopping Barber in the RV. "'[O]nly a purpose to cause harm **unrelated** to the legitimate object of arrest' is sufficiently 'shocking to the conscience' to establish a due process violation." *Childress*, 210 F.3d at 1157 (quoting *Lewis*, 253 U.S. at 836).

Because the use of the police vehicles to ram the RV was related to the legitimate object of arrest, there is no constitutional violation.

Because Plaintiffs' complaint and the allegations contained in the proposed amended complaint lack factual allegations sufficient to state a claim that is plausible on its face under the Fourteenth Amendment, I agree with the magistrate judge that the City is entitled to judgment on the pleadings in its favor.  Further, any amendment is futile and will not be permitted.

    B.  <u>Plaintiffs Fail to State a Claim for Failure to Intervene and Municipal Liability</u>

As the magistrate judge explained,

> Count II of plaintiffs' complaint and proposed amended complaint asserts a claim against the individual officers for "failure to intervene" when their colleagues engaged in a violation of Mr. Pacheco's Fourth and Fourteenth Amendment Rights.  Doc. 1-1 at 7–8; Doc. 63-1 at 8–9.  The plaintiffs correctly assert that an officer is liable under § 1983 if the officer is in a position to prevent a constitutional violation by a fellow officer, and fails to intervene.  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983.").  This duty, however, is premised on there being an underlying constitutional violation.
>
> Similarly, Count III of plaintiffs' complaint and proposed amended complaint asserts a municipal liability claim against the City of Albuquerque for its policies, practices, and customs that "condoned and fostered the unlawful conduct of the individual officers."  Doc. 1-1 at 8–9; Doc. 63-1 at 9–11.  While municipalities are included among those persons to whom § 1983 applies, it only applies where the officers or employees of the municipality have committed a violation of a plaintiff's constitutional rights.  To establish municipal liability under § 1983, a plaintiff must demonstrate:  (1) <u>that an officer committed an underlying constitutional violation</u>; (2) that a municipal policy or custom exists; and (3) that there is a direct causal link between the policy or custom and the injury alleged.  *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998) ("[I]n order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation.").

Doc. 88 at 15–16. Because I find that Plaintiffs fail to allege sufficient facts to establish an underlying constitutional violation under the Fourteenth Amendment, they cannot sustain claims against the individual officers for failure to intervene (Count II) or against the City for municipal liability (Count III).

### C. Conclusion

After conducting a de novo review, I find that Plaintiffs do not allege sufficient facts in their original complaint or their proposed amended complaint to state a plausible claim for a violation of Tito Pacheco's Fourteenth Amendment rights as asserted in Count I. Consequently, Plaintiffs cannot sustain claims for failure to intervene or for municipal liability under § 1983, as asserted in Counts II and III. Therefore, for the reasons stated herein, I adopt the magistrate judge's proposed findings and recommended disposition (Doc. 88).

IT IS THEREFORE ORDERED that:

1) The City of Albuquerque's motion for judgment on the pleadings (Doc. 24) is GRANTED in part, and judgment is entered in Defendants' favor on Counts I, II, III, IV at ¶ 69, V at ¶ 77, VI at ¶ 87, VII at ¶ 96, and VIII at ¶ 103;

2) The Court DENIES Plaintiffs Orlando Pacheco, Tito Pacheco Jr., and the Estate of Tito Pachecho's Motion to Amend Complaint (Doc. 63) because the amendment would be futile;

3) The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims and REMANDS this case to the Second Judicial District Court.

DATED this 21st day of August, 2018.

_____
MARTHA VÁZQUEZ
United States District Judge

15